UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

Thomas E. Ferrandina,

                      Debtor.
----------------------------------------------------------------X
Donna De Curtis,

                      Plaintiff,

      -against-

Thomas E. Ferrandina

                      Defendant.
----------------------------------------------------------------X

Case No.: 13-73713-ast
Chapter 7

Adv. Pro. No.: 13-8170-ast

## DECISION AND ORDER GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the motion (the "Motion") filed by the plaintiff, Donna De Curtis ("De Curtis"), seeking summary judgment that a debt owed to her by Debtor, Thomas E. Ferrandina ("Ferrandina"), is nondischargeable under 11 U.S.C. § 523(a)(6) as arising from a willful and malicious injury.  Prior to this bankruptcy case, De Curtis had sued Ferrandina and others in the United States District Court for the Southern District of New York (the "District Court") claiming sexual harassment and workplace retaliation.  Ferrandina defaulted in answering that action and De Curtis obtained a default judgment against him in an amount in excess of $800,000.  Ferrandina sought to overturn the default judgment before the District Court and the Second Circuit Court of Appeals, and lost on each occasion.

In her Motion, De Curtis contends that Ferrandina should be precluded from contesting the District Court's extensive findings, which, if adopted by this Court, conclusively establish Ferrandina's nondischargeable liability to her.  Ferrandina counters that he did not have a full

and fair opportunity to litigate the harassment and retaliation claims in the prior litigation and that, even if issue preclusion applies, the District Court's findings do not support a grant of summary judgment.  For the reasons to follow this Court concludes that Ferrandina should be precluded from relitigating whether he sexually harassed and retaliated against De Curtis, and that De Curtis holds a fully liquidated, nondischargeable claim as a matter of law.  Therefore De Curtis' Motion is granted.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (I), and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

### Background and Procedural History

On July 16, 2013, Ferrandina filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.[1]

On October 15, 2013, De Curtis commenced this adversary proceeding by the filing of a complaint (the "Complaint"), which asserts only one claim: for a willful and malicious injury under § 523(a)(6).  De Curtis' claim is based on a default judgment (the "Judgment") entered by the District Court, supported by detailed findings of fact and conclusions of law set forth in various decisions of the District Court and the Second Circuit (the "Decisions").[2]

---

[1] Unless indicated otherwise, all references to sections or "§" are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] De Curtis attaches as exhibits to the Complaint and incorporates by reference the following Decisions: (1) *DeCurtis v. Upward Bound International, Inc., et al.*, 2011 WL 4549412 (S.D.N.Y. Sept. 27, 2011); (2) *DeCurtis v. Upward Bound International, Inc., et al.*, 2012 WL 4561127 (S.D.N.Y. Sept. 27, 2012); (3) *DeCurtis v. Upward Bound International, Inc., et al.*, 2013 WL 3270357 (S.D.N.Y. June 3, 2013); and (4) *De Curtis v. Ferrandina*, 529 F. App'x 85 (2d Cir. 2013).

Ferrandina filed an answer on November 14, 2013, denying all of the allegations in the Complaint related to his conduct and asserting several affirmative defenses (the "Answer").[3] [dkt item 4]

On November 21, 2013, the Court issued an Initial Adversary Scheduling Order (the "Pretrial Order") setting forth various pretrial deadlines.  [dkt item 6]

On January 9, 2014, De Curtis filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rules"), as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") (the "Rule 12(c) Motion"). [dkt item 9]  De Curtis argued that the pleadings demonstrate that the Judgment conclusively establishes a non-dischargeable claim under § 523(a)(6); in particular, De Curtis asserts that the findings of fact and conclusions of law issued by the District Court, which determined Ferrandina's liability for violations of New York State Human Rights Law, New York Executive Law § 296 *et seq.* (the "New York State Law"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 *et seq.* (the "New York City Law"), should be given preclusive effect.

On January 27, 2014, Ferrandina filed opposition to De Curtis' Rule 12(c) Motion (the "Opposition").  [dkt item 10]  Ferrandina argued that he did not cause any injury to De Curtis. He further argued that his liability was not fully and fairly litigated, that the District Court did not make factual findings sufficient to meet the willful and malicious standard applicable under § 523(a)(6), and that therefore the Rule 12(c) Motion should be denied.

On January 31, 2014, De Curtis filed a reply.  [dkt item 13]

---

[3] In responding to each specific allegation of the Complaint that refers to the District Court's findings, Ferrandina's Answer states that the "decision speaks for itself" but then denies the underlying factual allegations.

On February 25, 2014, the Court held an initial pretrial conference and heard oral argument on the Motion, after which the Court took the matter on submission.

On March 5, 2014, the Court approved a stipulation staying all of the deadlines contained in the Pre-Trial Order.  [dkt item 17]

On October 22, 2014, the Court entered an order converting the Rule 12(c) Motion to one for summary judgment under Rule 56, as incorporated by Bankruptcy Rule 7056. [4]  [dkt item 18]

On November 26, 2014, Ferrandina and De Curtis each filed statements of material facts under Local Bankruptcy Rule 7056-1 and summary judgment evidence in support of their respective positions.  [dkt items 21, 22, 23]  De Curtis' 7056-1 statement specifically references the District Court's findings and attaches, among other things, copies of the Decisions.  As evidence that genuine issues of fact remain here, Ferrandina attaches to his 7056-1 statement an affidavit he submitted to the District Court in support of his unsuccessful motion to vacate the Judgment.

The parties each filed responses on December 8, 2014.  [dkt items 25, 26]  In Ferrandina's response, Ferrandina admits that the District Court made the findings cited in De Curtis' 7056-1 statement, but responds that such finding "by the District Court was premised upon the [De Curtis'] submissions, but was not predicated upon testimony given at trial and some of the submissions considered by the District Court may not have been admissible at a trial

---

[4] Typically, for a court to consider matters outside the pleadings, it must convert a motion to dismiss or a motion for judgment on the pleadings to a motion for summary judgment. *See* FED. R. CIV. P. 12(d); FED. R. BANKR. P. 7012(b). When deciding a motion brought under Rules 12(b)(6) or 12(c), this Court must limit its review to facts and allegations contained in the complaint, documents incorporated into the complaint by reference or attached as exhibits, and matters of which the Court may take judicial notice. *Geron v. Seyfarth Shaw LLP(In re Thelen LLP)*, 736 F.3d 213, 218-19 (2d Cir. 2013); *Blue Tree Hotels, Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see also, Int'l Tobacco Partners, Ltd.,* 462 B.R. 378, 385 (Bankr. E.D.N.Y. 2011) ("The Court may consider documents that are integral to the complaint in deciding a motion to dismiss"). Here, however, because De Curtis as the plaintiff requested, *inter alia*, that the Court grant her judgment based entirely on the Decisions which were made part of her Complaint, and not the Answer, and because Ferrandina denied the material factual allegations of the Complaint, the Court determined that the more proper procedural course was to convert the Motion into a motion for summary judgment, and allow the parties to support their legal positions with such documents as could be made a part of a summary judgment record.

on the merits."  Ferrandina again denied that he committed the acts the District Court found he had committed.

## Undisputed Facts[5]

For the reasons discussed *supra*, the Court has determined that Ferrandina is precluded from relitigating the facts as found by the District Court related to his conduct and intentions, and that he is precluded from relitigating his liability under the New York State Law and the New York City Law as determined by the District Court.  Thus, the Court has determined that the following material facts are uncontroverted.

### The Sexual Harassment Action

On June 10, 2009, De Curtis commenced an action in the District Court entitled *DeCurtis v. Upward Bound Int'l*, No. 09 Civ. 5378 (RJS) against Ferrandina and other co-defendants (the "Sexual Harassment Action").  De Curtis alleged that the defendants sexually harassed her and then retaliated against her in violation of the New York State Law, the New York City Law, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"). (Licul Dec. Ex. 1, 4 at p. 3)  On April 28, 2010, the District Court entered the Judgment against Ferrandina, finding him liable for De Curtis' sexual harassment and retaliation claims under the New York State and New York City Laws.  That same day, the District Court entered separate default judgments against several of Ferrandina's other co-defendants holding them liable for De

---

[5] These facts are derived from the uncontested allegations in the Complaint, the parties' respective statements of undisputed facts under Local Bankruptcy Rule 7056-1, their statements in opposition thereto, and the evidence in the summary judgment record. Facts stated in a party's 7056-1 statement that are supported by testimonial or documentary evidence, but denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, have been accepted by this Court as true. *See* E.D.N.Y. Local Bankruptcy Rule 7056-1; *Meredith Corp. v. Sesac, LLC*, 1 F. Supp. 3d 180, 181 n.3 (S.D.N.Y. 2014).

Curtis' claims under Title VII[6], the New York State and New York City Laws.  (Licul Dec., Ex. 4 at p. 3; S.D.N.Y. dkt items 47-50)

The District Court subsequently scheduled an inquest to determine De Curtis' damages, which was held on October 14, 2010.  (Licul Dec. Ex. 1, S.D.N.Y. dkt items 56, 69; Ex. 4 at p. 3)  In connection with the inquest, De Curtis filed various pleadings in support of her calculation of damages.  (Licul Dec. Ex. 1, S.D.N.Y. dkt items 66-68, 76-77, 79, Ex. 8, 9)

On September 27, 2011, the District Court issued a Memorandum and Order in the Sexual Harassment Action liquidating De Curtis' damages.  *DeCurtis v. Upward Bound International, Inc., et al.*, 2011 WL 4549412 (S.D.N.Y. Sept. 27, 2011).  The District Court made the following detailed findings of fact[7] relevant here:

> De Curtis worked for Upward Bound International, Inc. ("Upward Bound") from 2003 through 2008, when she was involuntarily terminated.  At that time, Upward Bound was a Manhattan travel agency that specialized in making travel arrangements for corporate and entertainment industry clients.  Upward Bound ceased to exist in August 2009 and its operations were transferred to LDA Travel Corporation ("LDA"), a New York corporation that makes travel and transportation arrangements for clients, and Tzell Travel LLC ("Tzell"), a New York limited liability company that sells airline tickets and hotel accommodations.  *Id.* at *1.

> Ferrandina was Vice President of Operations at Upward Bound and De Curtis' supervisor from 2003 to 2006.  In 2003, Ferrandina recruited De Curtis to work at Upward Bound.  Beginning in July 2004, Ferrandina sexually harassed De Curtis.  Among other things, Ferrandina repeatedly touched De Curtis in a sexual manner without her consent, sent her sexually explicit e-mails, made sexually explicit comments, and called her late at night and on weekends to talk about sex.  *Id.*  When De Curtis objected to Ferrandina's behavior, Ferrandina threatened her job.  As a result of Ferrandina's actions, De Curtis "was constantly stressed, nervous and unable to sleep."  *Id.*  De Curtis dreaded going to work, and felt sick each time Ferrandina called her into his office.

---

[6] De Curtis acknowledges in the Complaint that Title VII does not provide for individual liability; thus, De Curtis' claims against Ferrandina here are based exclusively on the New York State and City Laws.

[7] In rendering its decision, the District Court stated that "[a] defendant's default constitutes an admission of all well-pleaded factual allegations in the complaint except for those relating to damages." *DeCurtis v. Upward Bound International, Inc., et al.*, 2011 WL 4549412, at *1 n.1 (S.D.N.Y. Sept. 27, 2011) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  The Court also dismissed De Curtis' Title VII claims against Ferrandina. *See id.*, at *2 n.2.

In August 2004, De Curtis complained to Debra Feldman, the head of human resources at Upward Bound, about Ferrandina's conduct. Feldman informed Seth Rudman ("Rudman"), the then-owner of Upward Bound. Rudman took no action in response to De Curtis' complaint, telling her instead to not "let Ferrandina upset her." *Id.* However, in May 2006, De Curtis' co-workers complained to Rudman about Ferrandina's behavior toward De Curtis. Upward Bound hired a law firm to conduct an internal investigation, and Ferrandina was subsequently fired in August 2006. *Id.*

After firing Ferrandina, Rudman and Upward Bound retaliated against De Curtis by refusing to give her new business and removing her from at least one account. Additionally, Rudman rebuffed De Curtis' attempts to take on new work and generate additional business. In October 2007, De Curtis was removed from her office and relocated to an area separate from the rest of her co-workers, even though Upward Bound had four empty offices available. During this period, De Curtis felt like she "was going to have a nervous breakdown," lost her self-esteem and self-confidence, feared losing her job, and felt humiliated at work. *Id.* at *2. In April 2008, Rudman fired De Curtis, claiming she had failed to meet her sales targets. Another person was hired to fill De Curtis' position. *Id*.

In August 2009, Upward Bound ceased its operations, continuing only as a shell corporation. Thereafter, Rudman transferred Upward Bound's operations to LDA and Tzell. As part of the transfer, at least nine former Upward Bound employees were retained by LDA and Tzell to service Upward Bound's former clients. De Curtis, who had been fired in 2008, was not among them. *Id.*

At the time De Curtis was dismissed by Upward Bound, she earned an annual salary of approximately $90,000. De Curtis also received additional compensation for working weekends, earning $1,500 in compensation for this work in the first quarter of 2008. In 2008, De Curtis was also entitled to receive $2,444.16 in home phone reimbursement and $119.76 for home Internet reimbursement. Although De Curtis eventually found employment at another travel agency, her annual salary was $47,217 per year less than what she earned at Upward Bound. *Id.*

The District Court awarded De Curtis back pay in the amount of $185,087.56 plus prejudgment interest from July 1, 2004 through the date of entry of the judgment, front pay in the amount of $236,085 and compensatory damages of $100,000. *Id.* at *9.

In considering whether to award De Curtis punitive damages, the District Court noted that such damages are only warranted where a defendant's conduct is motivated by evil motive or intent, when it involves reckless or callous indifference to federally protected rights of others, and that egregious or outrageous acts can serve as evidence supporting an inference of the

requisite evil motive. *Id.* at *5.[8]  The District Court then went on to find that Ferrandina's

conduct was "sufficiently outrageous that any reasonable employer must have known that [De

Curtis'] rights were being violated.  His conduct was repeated and deliberate".  *Id.*  The District

Court then awarded De Curtis punitive damages of $75,000, but not the $250,000 she had

requested.  *Id.*

Finally, the District Court awarded De Curtis' attorney's fees of $206,443 under the New

York City law[9], and costs of $8,851.53.  *Id.* at *9.

On October 4, 2011, the District Court issued a money judgment awarding De Curtis

$845,309.11 against Ferrandina and his co-defendants, jointly and severally.  (Licul Dec., Ex. 1,

S.D.N.Y. dkt item 81; Ex. 4 at pp. 10-11)

### *Ferrandina's Unsuccessful Efforts to Vacate the Judgment*

On November 1, 2011, Ferrandina appeared in the Sexual Harassment Action.  (Licul

Dec., Ex. 1, S.D.N.Y. dkt item 82)  On November 3, 2011, Ferrandina appealed the entry of the

default and, on December 22, 2011, he moved to vacate the Judgment (the "Motion to Vacate").

The Second Circuit stayed Ferrandina's appeal pending resolution of his Motion to Vacate.

(Licul Dec., Ex. 1, S.D.N.Y. dkt items 84, 90, 95; Ex. 2, 2d Cir. dkt items 1, 19, 20)

The parties vigorously litigated the Motion to Vacate.  Ferrandina submitted a

memorandum of law, an affidavit, and numerous exhibits.  (Licul Dec., Ex. 1, S.D.N.Y. dkt

items 90, 93, 94)  De Curtis filed opposition papers, which included a declaration and several

---

[8] The District Court stated: "Punitive damages are available under Title VII and NYCHRL." *Id.* at *5 (citing 42 U.S.C. § 1981a(b)(1); N.Y.C. Admin. Code § 8–502(a)). Specifically, "[p]unitive damages may be awarded for a civil rights claim against a defendant employer under either Title VII or the NYCHRL if the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* (quoting *Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *2 (E.D.N.Y. May 11, 2010) (internal quotation marks omitted)).

[9]  "[U]nder New York City law, a Court, in its discretion, may award a prevailing party in a discrimination case costs and reasonable attorney's fees." *Id.* at *6 (citing N.Y.C. Admin. Code. § 8–502(f)).

exhibits.  (Licul Dec., Ex. 1, S.D.N.Y. dkt items 96, 97; Ex. 10)  Ferrandina filed a reply brief.

(Licul Dec., Ex. 1, S.D.N.Y. dkt item 98)  Together the parties filed three briefs and two

extensive affirmations, attaching a total of approximately 30 exhibits.  (Licul Dec., Ex. 1,

S.D.N.Y. dkt items 90, 93, 94, 96, 97, 98)

On September 14, 2012, the District Court held oral argument on the Motion to Vacate

and on September 27, 2012, issued a Memorandum and Order denying it in its entirety (the

"Vacate Order").  (Licul Dec., Ex. 1, S.D.N.Y. dkt items 107, 109; Ex. 5 at pp. 4, 10); *DeCurtis*

*v. Upward Bound International, Inc., et al.*, 2012 WL 4561127 (S.D.N.Y. Sept. 27, 2012).  In

denying Ferrandina's Motion to Vacate, the District Court relied on the documentary and

testimonial evidence submitted by both parties.  (Licul Dec., Ex. 5 at p.1, n.l; *see also* Licul Dec.,

Ex. 5 at pp. 2-4)

In its Vacate Order, the District Court made the following findings:

Ferrandina did not appear or otherwise respond to the complaint, correspondence, or
orders issued in the Sexual Harassment Action at any time prior to his Motion to Vacate.
After service of the complaint, which Ferrandina denied he received, De Curtis sent
approximately twenty additional items to Ferrandina related to her claims, resulting in
dozens of notices being left at his residence.  These items included, *inter alia*, schedules
of court conferences, discovery requests, and an Order to Show Cause as to why a default
judgment should not be entered against Ferrandina.  De Curtis sent these items using
certified mail, registered mail, regular mail and FedEx; and for the Order to Show Cause,
process service on different days at different times, and finally by using the "nail and
mail" method.  *DeCurtis*, 2012 WL 4561127at *2.

Ferrandina's excuses for failing to receive service or correspondence from Ferrandina
were simply not credible.  Ferrandina did not deny that he lived at the address at the time
in question and he only pointed to discrepancies in five of the twenty items sent to him;
Ferrandina's street name was misspelled by one letter in three of these items and in the
other two items Ferrandina's last name was altered by one letter.  Ferrandina admitted
that he had actual notice of the Sexual Harassment Action as early as July 2009, when he
received a notice of appearance from Upward Bound's attorney in the mail.  Ferrandina
also admitted to receiving a notice dated October 10, 2011, from De Curtis' attorney
indicating that an award of damages had been entered against him.  *Id.* at *2-3.

During oral argument on the Motion to Vacate, Ferrandina's counsel requested that Ferrandina be allowed to testify at an evidentiary hearing so that the District Court could "make a determination for [itself] whether [it] believe[d] him." *Id.* at *3 (alterations in original) Ferrandina was warned of the consequences of "coming in before [the District Court] and lying." *Id.* Ferrandina's counsel reaffirmed his request and the District Court scheduled an evidentiary hearing. However, just days before the hearing was to take place, Ferrandina abruptly changed course; Ferrandina's counsel filed a letter stating that he "wishe[d] to respectfully withdraw his request" after "discussing the matter at length with [Ferrandina]." *Id.* at *3, 5 (alterations in original).

Ferrandina failed to rebut the presumption that he was properly served with the summons and complaint. *Id.* at *5.

Ferrandina's default was not the result of mistake, inadvertence, surprise, or excusable neglect. *Id.* at *6. His default was "plainly willful" and "most damning [wa]s Ferrandina's failure to testify in support of his account" after being afforded the opportunity to do so. *Id.* at *7. Ferrandina further failed to establish the existence of a meritorious defense to the claims asserted against him or that vacating his default would not cause prejudice to De Curtis. *Id.* at *8. His defenses were without merit, because, *inter alia*, his conclusory denials and evidence that De Curtis did not subjectively perceive Upward Bound to be a hostile work environment were wholly insufficient to establish a complete defense if proven at trial. *Id.*

Ferrandina was unable to show any other reason to justify vacating his default. The imposition of liability against Ferrandina for retaliation conduct that occurred after he was terminated from Upward Bound was not evidence of an extreme and undue hardship. "Clearly, without Ferrandina's conduct, there would be no award to vacate… [T]he record reflects that Ferrandina was responsible for the hostile work environment that prompted [De Curtis'] claims. If Ferrandina had not 'created an environment permeated with intimidation, and volatility' or 'engaged in inappropriate and offensive behavior' in the office, he would not face any liability ... Likewise, Ferrandina repeatedly advocated for [De Curtis'] termination, pressing Upward Bound's owner to 'dismiss [De Curtis] immediately' due to her 'ongoing undermining of [Ferrandina's] authority.' Though her firing may not have come soon enough for Ferrandina, [De Curtis'] retaliation claim can certainly be traced back to Ferrandina's conduct." *Id.* at *9.

After the District Court denied Ferrandina's Motion to Vacate, on October 15, 2012, the

Second Circuit lifted the stay on appeal. (Licul Dec., Ex. 2, 2d Cir. dkt item 34; *see* Licul Dec.,

Ex. 1, S.D.N.Y. dkt item 110)[10]

---

[10] Neither the District Court nor the Second Circuit granted a stay of enforcement of the Judgment pending the appeal, and Ferrandina failed to make any payments on the Judgment or post a supersedeas bond. (*see* Licul Dec., Ex. 1, 2, 6, 13) De Curtis sought and obtained an Order to compel Ferrandina to post a cost bond for the appeal; on June 3, 2013, the District Court ordered Ferrandina to post a cost bond in the amount of $43,750 as security for

On June 11, 2013, Ferrandina appealed the Vacate Order to the Second Circuit.  (Licul Dec., Ex.1, S.D.N.Y. dkt item 110; Ex. 2, 2d Cir. dkt item 34)

The parties fully briefed the appeal; Ferrandina filed two briefs, including a 49-page brief in support of the appeal and an 8-page reply brief, and De Curtis submitted a 50-page brief in opposition to the appeal.  In addition, the parties submitted a joint appendix and supplemental appendix that consisted of approximately 623 pages.  (Licul Dec., Ex. 2, 2d Cir. dkt items 56, 57, 73, 80, 87-88)

On July 16, 2013, following briefing and oral argument, the Second Circuit issued a summary order affirming the Vacate Order.  *De Curtis v. Ferrandina*, 529 F. App'x 85 (2d Cir. 2013).  The Second Circuit noted, *inter alia*, that "there was more than ample evidence from which to conclude that Ferrandina's denial that he was served lacked credibility."  *Id.* at 86.  That same day, Ferrandina filed this bankruptcy case.

## Discussion

### A. The Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7056(c), provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted).  A movant has the initial burden of establishing the absence of any genuine issue of material fact.  *Celotex*, 477 U.S. at 322-23.  A fact is "material" if it "might affect the outcome of the suit under

---

costs, including attorneys' fees, that De Curtis anticipated incurring on appeal.  (Licul Dec., Ex. 1, S.D.N.Y. dkt item 127; Ex. 6 at p. 8)  Ferrandina did not post his bond. (Ferrandina's 7056-1 Statement at ¶29)

the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact

is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* If the movant meets its initial burden, the nonmoving party "must do

more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson,* 477 U.S. at 249-50 (internal citations omitted).

The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and

inferences to be drawn from the underlying facts should be resolved in favor of the party

opposing the motion, and all doubts as to the existence of a genuine issue for trial should be

resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.

1988) (citing *Celotex Corp.*, 477 U.S. at 330 n.2 (1986) (Brennan, J., dissenting)); *see also*

*Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995). "If, when viewing the evidence

produced in the light most favorable to the non-movant, there is no genuine issue of material

fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506

(S.D.N.Y. 2001).

### B. Collateral Estoppel (Issue Preclusion)

It is well settled that a party may invoke the common law doctrines of collateral estoppel

(issue preclusion) and res judicata (claim preclusion) to preclude another party from relitigating

claims and issues that have already been decided in prior litigation. *See Allen v. McCurry*, 449

U.S. 90, 94 (1980); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (a final

judgment on the merits of an action precludes the parties or their privies from relitigating claims

that were or could have been raised in the first action). Bankruptcy courts may apply issue

preclusion in non-dischargeability litigation.  *Grogan v. Garner*, 498 U.S. 279, 284 (1991) ("If the preponderance standard also governs the question of nondischargeability, a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action."); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006); *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).

In addition to federal courts being asked to give preclusive effect to each other's judgments, federal courts are often called upon to give preclusive effect to judgments of the state courts, and vice versa.  *Grogan*, 456 U.S. at 284-86; *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so…." quoting *Allen,* 449 U.S. at 96); *see also* U.S. CONST. art. IV, § 1 (Full Faith and Credit Clause); 28 U.S.C. § 1738.

Because Ferrandina's liability was decided under state law, this Court is presented with a threshold question of whether to apply the New York state or federal common law rules of issue preclusion.[11]  Typically, federal common law is applied to determine the preclusive effect of a federal judgment, while state law is applied to determine the preclusive effect a federal court is to give a state court judgment.  *See Marvel Characters, Inc.,* 310 F.3d at 286; *Guggenheim Capital, LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 800 (Bankr. E.D.N.Y. 2014).  The United States Supreme Court has determined that when federal or state courts are asked to give preclusive effect to a federal judgment entered in a diversity case, the second court should apply the "law that would be applied by the state courts in the State in which the federal diversity court

---

[11] Although similar, the federal common law and New York state rules of issue preclusion are slightly different from one another. *See Farrell v. Burke*, 449 F.3d 470, 482-83 (2d Cir. 2006) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 331 n.4 (2d Cir. 2003)).

sits".[12] *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *see also NAS Electronics, Inc. v. Transtech Electronics Pte Ltd.*, 262 F. Supp. 2d 134, 143 (S.D.N.Y. 2003) ("the rule announced in Semtek applies…where the preclusive effect of a federal decision in a diversity case is being litigated in federal court.").

Similarly, state law rules of preclusion should be applied to state law claims that have been determined by a federal court exercising pendent or supplemental jurisdiction under 28 U.S.C. § 1367 in a federal question case. *See Access 4 All Inc. v. Trump Intern. Hotel and Tower Condominium*, 2007 WL 633951, at *3 (S.D.N.Y. Feb. 26, 2007) (citing *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989)).

Here, De Curtis argues that New York's rules of preclusion should apply because the District Court asserted diversity or supplemental jurisdiction over the claims decided in her favor under the New York State and City Laws; De Curtis alternatively argues that if the federal rules of preclusion apply, the result would not be any different[13]. Ferrandina contends that "New York State and Federal law apply more or less the same elements with respect to … collateral estoppel" and therefore "choice of law is a non-issue in this matter". Opposition, p. 8 ¶ 24. Because the District Court dismissed De Curtis' Title VII claims against Ferrandina and held him

---

[12] In considering the preclusive effect to be given by a state court to a prior federal court dismissal of a diversity action, the Supreme Court noted that "nationwide uniformity … is better served by having the same claim-preclusive rule … apply whether the dismissal has been ordered by a state or a federal court." *Semtek*, 531 U.S. at 508.

[13] This Court notes that collateral estoppel under federal law applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Marvel Characters*, 310 F.3d at 288-89. The general rule under federal law is that default judgments lack preclusive effect. *Mishkin v. Gurian (In re Adler, Coleman Clearing Corp.)*, 205 F. App'x 856 (2d Cir. 2006). However, an exception to this general rule may be found where a defendant has abused the litigation process, *see Adler*, 205 F. App'x at 857 n.2, or a prior court made "findings of fact and conclusions of law at an evidentiary hearing, in connection with a motion to vacate a default judgment." *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, 280 F. Supp. 2d 244, 254, 257 (S.D.N.Y. 2003). As indicated above, after granting Ferrandina's request to testify, Ferrandina changed his mind and declined to testify in support of his Motion to Vacate. The District Court then made detailed findings of fact and conclusions of law in its Vacate Order, which the Second Circuit affirmed.

personally liable to De Curtis under the New York State and City Laws, and because Ferrandina

does not argue that he should prevail under federal preclusion rules even if he loses under state

preclusion rules, this Court will apply New York's rules of preclusion and will not engage in a

separate analysis under the federal standards.

The Second Circuit has held that, under New York law, issue preclusion is properly

invoked when "(1) the identical issue necessarily was decided in the prior action and is decisive

of the present action, and (2) the party to be precluded from relitigating the issue had a full and

fair opportunity to litigate the issue in the prior action." *Evans*, 469 F.3d at 281 (citing *Kaufman*

*v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56, 482 N.E.2d 63, 492 N.Y.S.2d 584 (1985)).  The

Second Circuit has also held that collateral estoppel may be invoked under New York law to

preclude a party from relitigating a default judgment.  *Id.* at 282[14]; *Kelleran*, 825 F.2d at 694

(citing, among others, *Amusement Business Underwriters v. American International Group*, 66

N.Y.2d 878, 489 N.E.2d 729, 498 N.Y.S.2d 760, 762 (1985)); *see also Adler v. Ng (In re Adler)*,

395 B.R. 827, 837 (E.D.N.Y. 2008) (discussing *Evans*); *Moxey v. Pryor (In re Moxey)*, 522 B.R.

428, 439 (Bankr. E.D.N.Y. 2014).  This two-step test also is subject to different burdens of

proof; that is, the "party seeking the benefit of collateral estoppel has the burden of

---

[14]  Not all courts agree that the Second Circuit properly stated New York's application of issue preclusion arising from a default judgment. Judge Glenn has stated in *dicta* that in *Evans*, "the court concluded that New York courts give collateral estoppel effect to default judgments, but that conclusion appears questionable. Three earlier decisions of the New York Court of Appeals strongly suggest that collateral estoppel should *not* normally be applied to default judgments." *In re Soliman*, 515 B.R. 179, 185 (Bankr. S.D.N.Y. 2014) (emphasis in original). Judge Glenn cited to *D'Arata v. N. Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 667, 564 N.E.2d 634, 563 N.Y.S.2d 24 (1990) (applying RESTATEMENT (SECOND) OF JUDGMENTS § 27 & cmt. e); *Halyalkar v. Board of Regents of State of N.Y.*, 72 N.Y.2d 261, 267-68, 527 N.E.2d 1222, 532 N.Y.S.2d 85 (1988) (applying RESTATEMENT (SECOND) OF JUDGMENTS § 27 & cmt. e); and *Kaufman*, 65 N.Y.2d at 456-57 (stating that "[a]n issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation" (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmts. d-e)). However, Judge Glenn went on to note that "Second Circuit cases such as *Evans* are binding on this Court on issues of New York law, absent a later decision by the New York Court of Appeals". *Soliman*, 515 B.R. at 186. The court then considered whether the debtor's criminal conviction should be given preclusive effect, without reaching the issue of whether the underlying judgment should be entitled to the same. *Id.* at 186-87. Because *Evans* stands as precedent also binding this Court on issues of New York law, this Court will apply the issue preclusion test as enunciated therein.

demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." *Evans*, 469 F.3d at 281-82. The Second Circuit has also noted that issue preclusion "is a flexible doctrine" whose application depends upon "general notions of fairness involving a practical inquiry into the realities of the litigation." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65-66 (2d Cir. 2007) (applying New York law to determine whether issue preclusion should be invoked in a § 523(a)(4) defalcation action) (quoting *Jeffreys v. Griffin*, 1 N.Y.3d 34, 41, 801 N.E.2d 404, 769 N.Y.S.2d 184 (2003)). For the reasons to follow, this Court has determined that issue preclusion should be applied.

### 1. Full and fair opportunity to litigate

Ferrandina has argued that because the Judgment was entered by default, he did not have a full and fair opportunity to litigate the underlying issues. The highly litigious record of proceedings prior to this bankruptcy and the adverse rulings of the District Court and the Second Circuit belie any such assertion.

In *Evans*, the Second Circuit addressed a substantially similar issue: whether chapter 7 debtors in a nondischargeability action should be permitted to relitigate their liability for fraud determined under a prepetition New York state default judgment. 469 F.3d at 280. The *Evans* debtors were properly served with a state court complaint which alleged fraud, failed to respond to that complaint, and failed to appear for the subsequent inquest at which the plaintiff offered evidence of the debtors' fraud; however, the *Evans* debtors failed to contest the state court's default fraud judgment before filing for bankruptcy. *Id.* at 280, 282. The *Evans* court held that collateral estoppel should be applied because the debtors were previously afforded a full and fair

opportunity to litigate the issue of fraud and because the state court necessarily decided the issue. *Id.* at 282-83.

Here, the District Court found Ferrandina liable for violations of the New York State and City Laws following Ferrandina's default, and the record demonstrates that Ferrandina vigorously sought to vacate the Judgment.  The District Court rejected his request because he had been properly served with the complaint and received numerous pleadings, yet deliberately chose not to participate in the Sexual Harassment Action until after the Judgment had been entered against him.  In challenging his default, Ferrandina requested to testify about whether or not he had been served with pleadings prior to the Judgment being entered, had his request granted, and then on the eve of the evidentiary hearing, voluntarily withdrew his request to testify.  The District Court found Ferrandina's refusal to testify on his own behalf "most damning".  *Id.* at *5, 7 ("just days before the [evidentiary] hearing was to take place, Ferrandina abruptly changed course, and declined the opportunity to present evidence and subject himself to cross-examination. Accordingly, the Court now has little difficulty dismissing as 'self-serving and unreliable [Ferrandina's] bald' denials of service.").  He lost his Motion to Vacate, appealed, and then lost before the Second Circuit.  Not only was Ferrandina afforded a full and fair opportunity to litigate his liability for sexual harassment and workplace retaliation under the New York State and City Laws, he had greater opportunities to do so than the *Evans* debtors[15]; as such, he should not be allowed to relitigate the District Court's liability determinations.

---

[15] This Court recognizes that some New York courts have held that although default judgments should not generally be entitled to preclusive effect, collateral estoppel should apply in situations "where the party against whom preclusion is sought appears in the prior action, yet willfully and deliberately refuses to participate in those litigation proceedings, or abandons them, despite a full and fair opportunity to do so." *In re Abady*, 22 A.D.3d 71, 85, 800 N.Y.S.2d 651 (1st Dep't 2005) (citing *Kaufman*, 65 N.Y.2d at 456); *see also Windley v. City of New York*, 104 A.D.3d 597, 598, 961 N.Y.S.2d 441 (1st Dep't 2013). Based on the totality of the record, this Court finds and concludes, in the alternative, that Ferrandina cannot avoid the preclusive effect of the Judgment because of his deliberate refusal to participate in or abandonment of the Sexual Harassment Action. Allowing Ferrandina to avoid preclusion here opens the door to gamesmanship by allowing a party to attempt to attack a default judgment,

### 2.    *Identical to an issue necessarily decided and decisive of the present action*

The Court must next determine whether De Curtis' § 523(a)(6) claim for a "willful and malicious injury" was necessarily decided in the Sexual Harassment Action.  *See Evans*, 469 F.3d at 282 ("[F]or a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." (quoting *D'Arata*, 76 N.Y.2d at 667)).  Judge Grossman of this Court has noted that "there are numerous cases in which courts have found sexual harassment and retaliation judgments vulnerable to exception from discharge in bankruptcy under section 523(a)(6)," but that while such an adverse judgment "reflects a debtor's willful disregard for the protected civil rights of others, [it] does not *per se* establish an exception to discharge under section 523(a)(6)."  *In re Goldberg*, 487 B.R. 112, 126-27 (Bankr. E.D.N.Y. 2013) (citations omitted).  Thus, to determine whether there is an identity of issues between Ferrandina's multiple violations of De Curtis' civil rights and her § 523(a)(6) claims, this Court must closely analyze the District Court's findings of fact and conclusions of law made in the Sexual Harassment Action and compare them to the elements of De Curtis' § 523(a)(6) claim.  *See Hyman*, 502 F.3d at 66.

### a.    *Elements of a willful and malicious injury under 11 U.S.C. § 523(a)(6)*

Section 523(a)(6) provides that debts incurred "for willful and malicious injury by the debtor to another entity or the property of another entity" are not dischargeable.  11 U.S.C. § 523(a)(6).  The plaintiff bears the burden of demonstrating by a preponderance of the evidence that the debt arose from a willful and malicious injury.  *Grogan*, 498 U.S. at 291 (1991).  The

---

abandon that effort, after losing that attack appeal, lose on appeal, and then file bankruptcy and argue that he did not have a full and fair opportunity to litigate the merits of the default. Thus, even if New York applies a more stringent test to give preclusive effect to a default judgment, that test would also be satisfied here given Ferrandina's willful and deliberate refusal to participate in the Sexual Harassment Action.

term "willful" means "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Reckless or negligent conduct will not satisfy § 523(a)(6)'s "willful" requirement. *Id*.

Courts within the Second Circuit have found that if a debtor believes that an injury is substantially certain to result from his conduct, the debtor will be found to have possessed the requisite intent to injure required under *Geiger*. *See, e.g.*, *Margulies v. Hough (In re Margulies)*, 517 B.R. 441, 452-453 (S.D.N.Y. 2014); *VW Credit, Inc. v. Salim (In re Salim)*, 2015 WL 1240000, at *22, 26 (Bankr. E.D.N.Y. Mar. 16, 2015); *Soliman*, 515 B.R. at 185; *Chaffee v. Chaffee (In re Chaffee)*, 2013 Bankr. LEXIS 3641, at *18 (Bankr. N.D.N.Y. Sept. 3, 2013); *cf Sanger v. Busch (In re Busch)*, 311 B.R. 657, 669 (Bankr. N.D.N.Y. 2004).[16]

Moreover, the term "malicious" has been defined by the Second Circuit to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996). "Malice may be implied 'by the acts and conduct of the debtor in the context of the surrounding circumstances." *Ball*, 451 F.3d at 69 (quoting *id.* at 88). Further, "[m]alice is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *In re Hambley*, 329 B.R. 382, 402 (Bankr. E.D.N.Y. 2005) (citations omitted). Implied or constructive malice may also be found where the debtor's conduct has "no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor." *American Honda Finance Corp. v. Ippolito (In re Ippolito)*, 2013 WL 828316, at *7 (Bankr. E.D.N.Y. Mar. 6, 2013) (internal quotation marks omitted).

---

[16] This Court notes that the Second Circuit has not expressly ruled on whether the test for deliberate or intentional injury under Section 523(a)(6) is an objective test or a subjective test, and that a split of authority exists among courts which have reached this issue. *See Margulies*, 517 B.R. at 452-53 (collecting cases).

Bankruptcy courts in this circuit have concluded that an award of punitive damages, supported by detailed findings of a rendering court, can be given preclusive effect to satisfy the elements of a § 523(a)(6) nondischargeability claim. *See, e.g., Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 749-50 (Bankr. D. Conn. 2014); *Indo-Med Communities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 42-43 (Bankr. E.D.N.Y. 2011); *Stahl v. Gross (In re Gross)*, 288 B.R. 655, 660-61 (Bankr. E.D.N.Y. 2003).

   b. *Elements of De Curtis' Sexual Harassment and Retaliation Claims Against Ferrandina*

The District Court determined that Ferrandina engaged in employment discrimination, here sexual harassment, and retaliation in violation of the New York State and City Laws, and awarded her compensation. The District Court stated that "[De Curtis'] state and city law claims against Ferrandina provide a basis for each of the types of monetary awards granted." *See De Curtis,* 2011 WL 4549412, at *6. Moreover, Ferrandina's conduct was the lynchpin for each finding of liability, be it his—and only his—sexual harassment of [De Curtis] or his lobbying for [her] termination." *DeCurtis*, 2012 WL 4561127 at *6.

A discrimination claim brought under the New York State law requires that the plaintiff establish willful conduct. Under the New York State Law, it is unlawful for "an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability … to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. EXEC. LAW § 296(1)(a). In order to establish a *prima facie* case for discrimination under the New York State Law[17] a plaintiff must demonstrate "(1) membership in a protected class; (2) satisfactory job

---

[17] Claims for employment discrimination brought under the New York State Law and Title VII are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973) whereby the plaintiff bears the initial burden of establishing a *prima facie* case for intentional

performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Moore v. Houlihan's Restaurant, Inc.*, 2011 WL 2470023, at *3 (E.D.N.Y. May 10, 2011) (quoting *Ercole v. U.S. Dept. of Transportation*, 2008 WL 4190799, at *6 (E.D.N.Y. Sept. 10, 2008)).  With respect to the fourth element, a plaintiff can establish an inference of discrimination through direct evidence of discriminatory intent, or through circumstantial evidence demonstrating that the employer treated plaintiff less favorably than a similarly situated employee outside of her protected group. *Guzman v. City of New York*, 2015 U.S. Dist. LEXIS 34016, at *22-23 (S.D.N.Y. Mar. 18, 2015) (quoting *Jean v. Acme Bus Corp.*, 2012 WL 4171226, at *8 (E.D.N.Y. Sept. 19, 2012)).  Ultimately, "plaintiffs must prove that they were, individually, the victims of intentional discrimination." *Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 915 F. Supp. 2d 498, 505 (S.D.N.Y. 2013); *see Valenti v. Massapequa Union Free Sch. Dist.*, 2012 WL 1038811, at *9 & n.10 (E.D.N.Y. Mar. 28, 2012).

For a plaintiff to prevail on a discrimination claim asserted under the New York City Law she must likewise demonstrate that the defendant engaged in willful discriminatory behavior. The New York City Law provides that it is unlawful for "an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability…to discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. ADMIN CODE § 8-107.  Although the New York City Law contains markedly similar language to that of the New York State Law, and federal courts have

---

discrimination. *Vivenzio v. City of New York*, 611 F.3d 98, 106 (2d Cir. 2010); *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008). If the plaintiff is able to establish a prima facie case, the burden shifts to the defendant to defend his action by demonstrating "some legitimate, non-discriminatory reason" for that action. *Holcomb*, 521 F.3d at 138. If a satisfactory reason is provided, the plaintiff may still prevail by demonstrating that the employer's action was due to discrimination, but without the benefit of the presumption. *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (quoting *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

traditionally construed the New York State and City Laws together with their federal counterparts[18], the Second Circuit has instructed federal courts to analyze claims brought under the New York City Law "separately and independently" from any federal or state law claims. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108-09 (2d Cir. 2013). To establish a sexual harassment claim under the New York City Law, the plaintiff needs to demonstrate "by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Id.* at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 38-39 (1st Dep't 2009)). However, the plaintiff still bears the burden in demonstrating that the offending conduct was motivated by discriminatory intent. *Id.*; *see also Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012) (a plaintiff must link the adverse employment action to a discriminatory motivation in order to prevail under the New York City Law) *aff'd* 713 F.3d 163 (2d Cir. 2013).

The District Court also determined that Ferrandina engaged in workplace retaliation in violation of the New York State and City Laws. For a plaintiff to sustain a retaliation cause of action under the New York State and City Laws she must demonstrate willful retaliatory conduct.

The New York State Law makes it unlawful "for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article [such as gender discrimination]. N.Y. EXEC. LAW § 296(7). Thus, in order to establish a *prima facie* case for retaliation under the New York State Law, a plaintiff must demonstrate "(1) she engaged in protected activity; (2) the employer

---

[18] *See e.g., Estate of Hamilton v. City of New York*, 627 F.3d 50, 55 (2d Cir. 2010) (considering employment discrimination claims brought under the New York State and City Laws together and employing the same analysis for reviewing a claim brought under Title VII); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000) (same).

was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action." *Goldberg*, 487 B.R. at 124 (quoting *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362-61 (S.D.N.Y. 2012)).

The New York City Law prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. ADMIN. CODE § 8-107(7). In order to succeed on a claim for retaliation under the New York City Law, a plaintiff must "show that she took an action opposing her employer's discrimination, and that as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action". *Mihalik*, 715 F.3d at 112. The New York City Law is not a "general civility code"; in order to prevail on a retaliation claim brought under its provisions, a plaintiff must demonstrate that the conduct was at least in part caused by a retaliatory motive. *Id.* at 113 (internal citations omitted).

Under either the New York State Law or the New York City Law "retaliation requires evidence of a subjective retaliatory motive for the termination." *Goldberg*, 487 B.R. at 124 (quoting *Board of Educ. of New Paltz Cent. Sch. Dist. v. Donaldson*, 41 A.D.3d 1138, 839 N.Y.S.2d 558, 561 (3d Dep't 2007) (analyzing the New York State Law) (quoting *Pace Univ. v. NYC Comm'n on Human Rights*, 85 N.Y.2d 125, 647 N.E.2d 1273, 623 N.Y.S.2d 765 (N.Y. 1995) (analyzing the New York City Law))).

   c.   *De Curtis is Entitled to Issue Preclusion on Ferrandina's Nondischargeable Liability for her Sexual Harassment Claims and her Retaliation Claims under the New York State and New York City Laws*

The District Court's findings of fact and conclusions of law unquestionably make clear that Ferrandina's sexual harassment of and retaliatory conduct towards De Curtis were both willful and malicious as required under § 523(a)(6).

As to willfulness, not only did the District Court find that Ferrandina "created an environment permeated with intimidation, and volatility" and that his behavior was "inappropriate and offensive" *DeCurtis*, 2012 WL 4561127, at *10, the District Court specifically found that for nearly two years Ferrandina deliberately and intentionally discriminated against De Curtis because of her gender.  Ferrandina repeatedly touched De Curtis in a sexual manner without her consent, sent her sexually explicit e-mails, made sexually explicit comments, and called her late at night and on weekends to talk about sex.  *De Curtis*, 2011 WL 4549412, at *1.  As a result of Ferrandina's actions, De Curtis "was constantly stressed, nervous and unable to sleep", dreaded going to work, and felt sick each time Ferrandina called her into his office.  *Id.* at *5.

Ferrandina also intentionally retaliated against De Curtis.  When De Curtis objected to Ferrandina's behavior, he threatened her job in statements made to De Curtis and her employer. *Id.*  For example, after he was questioned about De Curtis' complaints, Ferrandina "repeatedly advocated for [De Curtis'] termination, pressing Upward Bound's owner to dismiss [her] immediately due to her ongoing undermining of [Ferrandina's] authority."  *DeCurtis*, 2012 WL 4561127, at *9 (internal quotation marks omitted).  Ferrandina was fired only after an internal investigation was conducted by outside counsel, corroborating De Curtis' complaints of Ferrandina's behavior.  After Ferrandina was terminated, De Curtis was removed from her office, relocated to an area separate from her co-workers, even though four empty offices were

available to employees, she was refused new business, and removed from at least one account. She was fired in April 2008 and another person was hired to fill her position.

The District Court's findings also make it clear that Ferrandina acted maliciously.  The District Court specifically evaluated whether Ferrandina had acted with malice or evil motive in discriminating and retaliating against De Curtis in assessing her entitlement to punitive damages. The District Court highlighted that punitive damages are only available to plaintiffs who have sufficiently demonstrated evil intent, based on egregious or outrageous behavior.  *De Curtis*, 2011 WL 4549412, at *5.  The District then awarded punitive damages, explicitly finding that Ferrandina's conduct was outrageous, repeated and deliberate, and that any reasonable employer must have known that De Curtis' rights were being violated.

Based upon this Court's review of the extensive findings and conclusions made by the District Court, this Court concludes that De Curtis has demonstrated the requisite identity of issues necessary to properly invoke issue preclusion as to Ferrandina's liability for sexual harassment and workplace retaliation under the New York State and City Laws.  Accordingly, De Curtis is entitled to summary judgment on her claim to establish Ferrandina's nondischargeable liability under § 523(a)(6).

### d.  De Curtis is also Entitled to Summary Judgment on Damages

As noted above, the District Court awarded De Curtis back pay in the amount of $185,087.56, prejudgment interest from July 1, 2004 through the date of entry of the judgment, front pay in the amount of $236,085, compensatory damages of $100,000, punitive damages of $75,000, attorney's fees of $206,443, and costs of $8,851.53.  *DeCurtis*, 2011 WL 4549412 at *9.  As also noted above, the District Court stated that "[De Curtis'] state and city law claims against Ferrandina provide a basis for each of the types of monetary awards granted."  *DeCurtis*,

2012 WL 4561127 at *6; *see* 2011 WL 4549412, at *3-6.  As the prevailing party, De Curtis was also awarded her costs.  *Id.* at *9; *see* FED. R. CIV. P. 54(d).

Because the District Court determined that these monetary awards were proper under New York State and/or City Laws, and because the employment discrimination and retaliation claims under New York State and the City Law each satisfy the § 523(a)(6) elements, De Curtis is also entitled to summary judgment that Ferrandina is precluded from relitigating the propriety of the monetary award of $845,309.11 in damages.

### Conclusion

For the foregoing reasons, this Court finds and concludes that De Curtis has established her entitlement to summary judgment that her Judgment against Ferrandina should be excepted from Ferrandina's discharge.

Therefore, it is hereby

**ORDERED**, that the Motion is granted; and it is further

**ORDERED**, that counsel for De Curtis shall submit a judgment in conformity herewith within **fourteen (14) days**; and it is further

**ORDERED**, that De Curtis, as the prevailing party, shall be entitled to her costs under Bankruptcy Rule 7054.



**Dated: May 1, 2015**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**